SHARPE v. SOUTHERN RY. CO., *ET AL.*

(119 S. E.; 245)

1. RAILROADS—EVIDENCE HELD TO SUSTAIN RECOVERY FOR DEATH OF ONE SITTING ON END OF A CROSSTIE.—Evidence in an action for the death of one killed by a train while he was sitting on the end of a crosstie, with his feet in a footpath that had been constantly used by the public, *held* to sustain a verdict for plaintiff, alleging negligent operation of the train without lookout and signals.

2. RAILROADS—CONTRIBUTORY NEGLIGENCE OF ONE SITTING ON END OF CROSSTIE HELD FOR JURY.—In an action for the death of one killed by a train while he was sitting on the end of a crosstie, contributory negligence *held* a question for the jury.

Before MOORE, J., Lexington, April, 1922. Affirmed.

Action by S. Paul Sharpe as Executor, etc., of James A. Sharpe, deceased, against Southern Railway Co. et al. Judgment for plaintiff and defendants appeal.

*Messrs. Frank G. Tompkins, George B. Cromer* and *C. M. Efird,* for appellants, cite: *Negative testimony:* 113 S. E., 326. *Lookout required:* 12 Neg. Comp. Cas., 809; 115 S. W., 1158; 70 S. C., 190; 105 S. C., 300.

---

NOTE: On contributory wilfulness or wantonness as a defense against an action for personal injury based on wilfulness of defendant, see note in L. R. A. 1918D, 1195.

On question of whether wantonness or wilfulness, precluding defense of contributory negligence may be predicated on the omission of a duty before the discovery of a person in peril, see note in 21 L. R. A. (N. S.), 427.

*Messrs. Timmerman & Graham* and *T. C. Sturkie,* for respondent, cite: *Exceptions too general:* 50 S. C., 2; 59 S. C., 496; 59 S. C., 104; 98 S. C., 291; 99 S. C., 217; 100 S. C., 43. *Case controlled by* 61 S. C., 556; 70 S. C., 190; 105 S. C., 301; 89 S. C., 161; 97 S. C., 61.

May 16, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for damages for the killing of the plaintiff's testator. The jury found for the plaintiff, and the defendant appealed. The appeal contends that there was no evidence of negligence on the part of the defendant, and conclusive evidence of contributory negligence.

Judge Moore, who heard the case on Circuit, gave his reasons for not granting a new trial as follows:

"Order Overruling Motion for New Trial.

"Upon the trial of this case the jury returned a verdict in favor of the plaintiff for $5,000. In due time the defendants noted a motion for a new trial upon five grounds, which were submitted in writing and filed in the record.

"The first three grounds stated in the motion for a new trial appear to me to be controlled by the principles announced by our Supreme Court in the cases of *Jones v. Railroad Co.,* 61 S. E., 556; 39 S. E., 758. *Sentell v. Southern Ry. Co.,* 70 S. C., 190; 49 S. E., 215. *Webb v. A. C. L. R. R. Co.,* 105 S. C., 301; 89 S. E., 546, and the authorities therein cited. Under these cases it was my duty to submit the issues raised in the case to the jury for settlement, and the jury having found against defendant's contention upon the issues of fact submitted to them, and there being abundant testimony, if believed by the jury, to support the verdict returned, I see no reason why I should interfere with the verdict so rendered. The plaintiff offered various witnesses to es-

tablish the fact that the public had been using the foot path along the end of the crossties of the railroad continuously, uninterruptedly, and without objection from the railroad company since the date of the construction of the railroad, and the defendants offered no testimony to contradict that contention. The testimony further tended to show that plaintiff's testator was struck and killed by a locomotive engine while sitting on the end of a crosstie of the railroad track with his feet resting in the traveled place along the end thereof, and that the railroad track was perfectly straight and free of any obstructions for more than 400 yards, and that persons riding upon a locomotive engine approaching the place where plaintiff's testator was sitting could, by the exercise of ordinary care, have seen an object on said railroad track or by the side thereof for said distance. It was also brought out in the testimony that there were two public road crossings near the point at which plaintiff's testator was struck and killed, one of which was within about 400 yards, and the other within about 150 yards, of the place of the collision. Testimony was also offered on behalf of the plaintiff to show that no signals were given, either statutory or otherwise, although the engineer and fireman upon the locomotive did testify that crossing signals were given, and that they were looking, and that they did not see the man whom the testimony tended to show had been actually killed. There was no contention on the part of the defendants that any effort whatsoever was made to slacken the speed of or stop the train, so as to avoid injuring plaintiff's testator.

"The fourth ground upon which a new trial is asked complains that I failed to charge the jury that any negligence of the fireman, contributing to the injury as a proximate cause thereof, would not be binding upon the defendant engineer. I charged the jury that it was the duty of the fireman to keep a lookout, and that, if he failed to do so, it was negligence which would bind that railway company

whose servant he was, but I did not charge that his negligence would bind the defendant engineer. No request was submitted upon the part of the defendant engineer to instruct the jury that the negligence of the fireman was not attributable to him, and therefore the question raised in this ground was not before the Court upon the trial of the case. The engineer could not have been prejudiced by any failure to give the instruction now contended for, for the reasons that the jury found that plaintiff's testator was killed by the locomotive engine at the time and place alleged in the complaint, and that the defendant engineer was in charge of said locomotive. The engineer testified that he did not see plaintiff's testator on track or close to it, and did not know that he had killed a person, and from that statement only two reasonable inferences are possible. One is that he was not keeping a lookout, as his duty required him to do so, or else, if keeping a lookout and seeing plaintiff's testator in a position of peril, he failed to use any care whatsoever for his safety. Besides it appears to me to be a notorious fact that the engineer is always in charge of the locomotive and the fireman thereof.

"As to the fifth ground of the motion, my attention has been called to no testimony from which any reasonable inference could have been drawn to sustain the allegation that the persons for whose benefit this action was brought were guilty of any negligence that contributed, even in a remote degree, to the death of plaintiff's testator. I cannot see that any of the grounds of the motion for a new trial are well taken. I am satisfied that the law of the case was correctly given the jury, and the issues of fact properly submitted to them for consideration, and, in my opinion, there is ample testimony to support the verdict returned by the jury. The motion for a new thial, therefore, is refused."

These reasons are entirely satisfactory to this Court.

II. Contributory negligence is a question for the jury. The case of *Davis v. Payne* (S. C.), 113 S. E., 326, does not sustain the appellant. In that case there was no evidence of negligence on the part of the defendant, and Miss Davis deliberately walked into a death trap.

The judgment is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE MARION (dissenting). It is alleged in the complaint that the plaintiff's testator, while walking along the defendant's track on a footpath at the end of the crossties, sat down on the end of one of the crossties for the purpose of resting, and fell asleep, and that while in that position he was negligently and recklessly run down and killed by one of defendant's locomotives. The Circuit Judge, in passing on motion for new trial, found that the evidence tended to establish the foregoing allegations of the complaint and that plaintiff's testator "was struck and killed by a locomotive engine while sitting on the end of one of the crossties on the railroad track with his feet resting in the traveled place along by the end thereof." The place of the collision was at least 150 yards away from any public road crossing. The casualty occurred at night, apparently between 12 and 1 o'clock. It is undisputed that decedent was not seen on the track, or in the path, by the engineer or fireman on the locomotive engine. The Circuit Judge correctly ruled that there was no evidence to support a verdict of punitive damages, and directed a verdict for the defendant as to the cause of action based on willfulness, wantonness, etc.

I think it is clear that it should be held as a matter of law that plaintiff's testator was guilty of contributory negligence. If so—the question of willfulness and wantonness being eliminated from the case—it follows that plaintiff was not entitled to recover. This point was perhaps not as def-

initely and distinctly raised upon the defendant's motion for
a directed verdict in the Circuit Court as it should have been.
But for the purposes of this appeal I think the question is
sufficiently raised by the defendant's third ground of mo-
tion for a directed verdict, considered in connection with
the ground distinctly laid on the motion for new trial as
follows:

"That the testimony warranted no other reasonable in-
ference than that the plaintiff's testator was guilty of at
least contributory negligence."

The question was considered on its merits by the Circuit
Judge. and decided adversely to the defendants' contention.
The appellants' third exception is expressly directed to an
assignment of error in so holding, and that exception should
be sustained.

According to the admitted facts, plaintiff's testator was at
the time of his death using the railroad track as a resting
place, and had converted it into a couch for his slumbers.
A railroad track is a place of danger that requires no label.
Granting that he was a licensee upon the traveled way by the
side of the railroad track, under the established rule in this
State the duty owed to him as such licensee by the railroad
company was to keep a reasonable lookout and to give such
warning of the approach of the train as the nature of the
place and the time and occasion might make proper in the
exercise of ordinary care.  *Jones v. Railroad Co.,* 61 S. C.,
556; 39 S. E., 758.  *Sentell v. Railway Co.,* 70 S. C., 183;
49 S. E., 215.  *Craig v. Railway Co.,* 89 S. C., 161; 71 S.
E., 983.  *Kirkland v. Railway Co.,* 97 S. C., 61; 81 S. E.,
306.  But the railway company owed no higher duty to
plaintiff's testator to keep a lookout for him, and to warn
him of the approach of its trains, than the licensee owed to
himself to keep a lookout for the approach of trains, and to
warn himself by the use of his senses of sight and hearing.

In the cases above cited, upon which cases the Circuit

Judge based his refusal of motion for new trial, the facts in each case were held to be open to a reasonable inference that at the time of the injury the licensee was in the exercise of due care. For example, in the case of *Jones v. Railway Co., supra,* Mrs Jones, with her husband and children, was using the railway track as a means of egress from the station, where the family had just disembarked as passengers, in the nighttime, while a high wind was blowing in the direction from which the train was backed, without warning, upon the decedent. The facts are reasonably susceptible of the inference that the decedent might have been in the exercise of ordinary care for her own safety and protection when struck. But in the case at bar the evidence is susceptible of no such inference. Tested by any standard sanctioned by common sense and human experience, the man who selects a railroad track as an inn in which to take his ease, or who voluntarily seats himself on the track and permits sleep to overcome him, is guilty of negligence per se. It was substantially so held in this State 70 years ago in the case of *Richardson v. Wilmington & M. R. Co.,* 8 Rich., 120, where recovery was denied a slave owner upon the ground that the act of his negro slave in going to sleep on the railroad track was such culpable contributory negligence as would preclude recovery. See, also, *Felder v. L. C. & C. R. Co.,* 2 McMul., 403. The reasons for holding such conduct on the part of an ignorant negro slave to be negligence as a matter of law, in the early stage of railroad development attained three-quarters of a century ago, apply with even more convincing and conclusive force to the man of ordinary sense and prudence in this day of vastly increased railroad traffic and of more numerous and swiftly moving trains.

If, therefore, plaintiff's testator was negligent in so placing himself, in going to sleep; and in failing to keep a lookout that would serve to apprise himself of the approach of the train, upon what valid ground can it be held that his dereliction was not such contributory negligence as will preclude re-

covery? The duty owed by both was the duty to exercise ordinary care to prevent the injury that resulted. The person most vitally concerned in preventing that injury was the plaintiff's testator. If such ordinary care in the circumstances required of either party a higher degree of vigilance in keeping a lookout and in acting thereupon for the protection of the licensee, the duty to exercise that higher degree of vigilance would seem clearly to rest upon plaintiff's testator. But let us assume that exactly the same degree of vigilance was required of the railroad's engine crew and the plaintiff's testator, and that both the engineer and the deceased were guilty of exactly the same lapse, or breach of duty, in going to sleep at their posts. We would then have the licensee upon the track, asleep, in violation of his duty to himself to keep a reasonable lookout, and to warn his somnolent brain through the use of his senses, and the engineer asleep on his engine, in violation of his duty to use ordinary care to look out for and warn the licensee, etc. Since no higher duty is imposed on the engineer to awake from his slumbers and see the man on the track than the man on the track owes to himself to awake from his slumbers and see the approaching train, and vacate his dangerous bed, obviously, the negligence of both would in that case continue up to the very moment of the collision. And it is equally obvious that where the lack of vigilance on the part of the deceased was due to sleep, and on the part of the engine crew to some other cause, the negligence of both likewise continues up to the moment of the collision.

If that is true, the evidence is not reasonably susceptible of an inference that the negligence of plaintiff's testator did not contribute to his injury as a proximate cause. Even if the doctrine of "last clear chance" obtained in this State (see *Spillers v. Griffin,* 109 S. C., 81; 95 S. E., 133, L. R. A., 1918D, 1193, and *Craig v. Augusta-Aiken Railway Co.,* 93 S. C., 49 76 S. E., 21), that doctrine, correctly applied, would not avail to change the result. The principle of the

last clear chance cannot be logically or reasonably extended beyond an actually "discovered peril." There is no basis in the case at bar to support an inference that the plaintiff's testator was seen upon the track in a position of apparent danger or that his presence thereon was ever actually discovered by the train crew. See *Haltiwanger v. Railroad Co.,* 64 S. C., 7; 41 S. E., 810. Here, where both owed an equal duty to discover the peril and both were oblivious of the impending collision, if either had a last clear chance, *it* lay with the plaintiff's testator, who could have avoided the injury when the train was within a few feet of his body, and when the train crew could not. Hence, if "proximate cause" be defined in the terms most favorable to plaintiff—for example, that it is the last negligent act which contributes to an injury and without which it would not have resulted (*Estep v. Price* [W. Va.] 115 S. E., 861)—still it cannot be said that the last negligent act was the failure of the engineer to discover the sleeper and to warn him or stop his train, any more than it was the failure of the sleeping man to awake and get out of the way in time to avoid the collision. Even if the negligence of the train crew could be regarded as active, while that of the plaintiff's testator was merely passive, at the time of the injury, if the passive negligence continued up to the time of the injury, and combined and concurred with the negligence of the train crew as a contributing cause, without which the injury would not have happened, it would be contributory negligence and would bar a recovery. *Sanders v. Mfg. Co.,* 71 S. C., 63; 50 S. E., 679. *McLean v. Railroad Co.,* 81 S. C., at p. 113; 61 S. E., 900; 1071, 18 L. R. A. (N. S.), 763; 128 Am. St. Rep., 892. In the consideration of this question of proximate cause in the old cases of *Felder v. L. C. & C. R. Co., supra,* and *Richardson v. Wilmington & M. R. Co., supra,* the Court expressly held that the proximate cause of the death of the man asleep on the track "was his own voluntary imprudence in placing himself in a situation of danger." I am aware of

no later decisions of this Court which, when correctly construed in the light of the facts and of the precise points raised in the particular case, constrain to a different conclusion in the case at bar. In any view, the plaintiff's testator was guilty of contributory negligence, and the plaintiff's recovery was thereby barred.

· For the reasons stated, the judgment of the Circuit Court should be reversed, and the cause remanded, with instructions to enter judgment for the defendant under rule 27 (90 S. E., xii).

Mr. Justice Cothran concurs.