## 10999

### STATE v. MARTIN

#### (115 S. E., 252)

1. HOMICIDE—READING OF STATUTE LIMITING AUTOMOBILE SPEED UNDER OTHER CIRCUMSTANCES HELD PREJUDICIAL.—In a prosecution for the killing of a child by running over her with an automobile, it was error for the presiding Judge to read to the jury Cr. Code 1912, § 602, limiting the speed of automobiles to six miles an hour under certain circumstances, none of which appeared in the case, without plainly indicating that the section was inapplicable, and the error was prejudicial to accused, where the negligence charged was based almost exclusively on the speed at which he was driving.

2. CRIMINAL LAW—CHARGING PROPOSITION OF LAW INAPPLICABLE TO CASE NOT REVERSIBLE UNLESS PREJUDICIAL.—Error in charging a proposition of law, where there are no facts to which it is applicable, is not necessarily reversible error, but to require reversal the Court must be satisfied there are reasonable grounds for supposing the jury might have been misled thereby to the prejudice of the accused.

3. CRIMINAL LAW—MODIFICATION OF CHARGE AS TO ACCIDENT HELD ERRONEOUS.—In a prosecution for homicide by negligently striking a child with an automobile, it was error to modify a requested charge that, if the injury was an accident and was not brought about by the negligent, willful or malicious misconduct of the accused, he could not be convicted, by adding thereto a statement that a negligent killing might be called an accident, even though it is true that in common parlance the term "accident" is applied to a catastrophe regardless of the question of negligence, since that modification was calculated to cast doubt upon the correctness of the request, and to confuse the jury.

Before SEASE, J., Cherokee, July, 1921. Reversed and remanded.

Edley Martin convicted of manslaughter and appeals.

The charge to the jury of Judge Sease here follows:

Mr. Foreman, and Gentlemen of the Jury: You must give the State and the defendant a fair and impartial trial according to the law and the evidence. You are the sole judges of the credibility of the witnesses and the force and effect to be given to their testimony. It is my duty to declare the law and your duty to find the facts and apply them to the law as the Court gives it to you. You must

take the law from the Court; you cannot make any law of
your own.

I charge you it is the law that you cannot write a verdict
of "Guilty" in this case unless you are satisfied of the guilt
of the defendant beyond a reasonable doubt.' You must
give the defendant the benefit of any and every reasonable
doubt that may arise in the consideration of the case. Rea-
sonable doubt is what the words indicate—a doubt for
which you can give a reason, not a flimsy or fanciful doubt,
but a reasonable doubt arising out of the testimony. If
you have a reasonable doubt on the whole case, solve it in
behalf of the defendant, and with a verdict of "Not guilty."
If you have no reasonable doubt as to the guilt of the de-
fendant, on the whole case, then write a verdict of "Guilty."
In a case of this kind the presumption is that the defendant
is innocent, and that presumption stays with him through-
out the whole trial of the case until you 12 men are satisfied
of his guilt beyond a reasonable doubt.

You will note this indictment charges the defendant with
"murder." Such a charge includes what is known as vol-
untary manslaughter, and also involuntary manslaughter.
I gather from the State's representative that the State does
not desire a verdict of "Guilty of murder." Nor does the
State contend for a verdict of "Guilty of voluntary man-
slaughter." The contention of the State here is that he is
guilty of involuntary manslaughter. Involuntary manslaugh-
ter presumes the unintentional killing of a human being un-
lawfully. There is no contention here that the defendant
intentionally caused the death. The contention on the part
of the State in this case, according to the indictment, is that
this defendant is guilty of involuntary manslaughter. That
contention is based upon negligence, therefore, you will bear
with me while I instruct you what negligence is. While the
statute law of the State of South Carolina is to some extent
regulative of or attempts to regulate the operation of auto-
mobiles on the public highway, there is an additional law

supplementary to it, known as the "common law"; that is, where a person is found to be negligent, outside of any connection with the statute that I will read to you later, and the death of another person is caused by such negligence, that is the kind of negligence that is involved in involuntary manslaughter.   Negligence is the want of due care—emphasizing the word "due"—that is, the care that is due under all the circumstances surrounding the person whose conduct you have under investigation.   In this case you have under investigation the conduct of the defendant at the time of the alleged homicide.   Negligence is doing that which a person of ordinary prudence and care would not have done, or leaving undone what a person of ordinary prudence and care would not have left undone under all the circumstances surrounding the person whose conduct you have under investigation.   The law erects as the standard a man of ordinary prudence and care.   Not the most careful or the most careless person, but a person of ordinary prudence and care.   Negligence  is the want of ordinary care—the want of that care a man of ordinary prudence and care would have observed under all the circumstances surrounding the situation as you find that it existed from the testimony.   If you find that the defendant measured up to the standard of a man of ordinary prudence and care in such situation as you find to have existed from the testimony, he is guilty of no offense.   If you find that he failed to observe the prudence and care that a man of ordinary prudence and care would have observed under all the circumstances surrounding the situation as you find it to have been at the time and place of the alleged homicide and also find that such failure to observe due care was the proximate cause of the death of the deceased, then you will find him guilty of involuntary manslaughter.   Negligence is the unintentional failure to observe due care—the unconscious failure to observe due care.   Negligence is the inadvertent failure to observe due care; that is, if you find that a person

fails to advert to the duty of observing due care, and thereby fails to perform that duty, that is negligence, and, if you find that a person is guilty of that negligence, and that negligence is the direct and proximate cause of the death of the deceased, then that person would be guilty of involuntary manslaughter. But, if you find that he observed due care, and measured up to the standard of a man of ordinary prudence and care, there would be no negligence in such a case, and your verdict would be "Not guilty."

Every person's rights are equal before the law; whether an under-aged person, or minor, or an old man, whether a pedestrian or driver of an automobile, or other vehicle, their rights are all equal before the law. I charge you that a person has a right to cross the highway. There is no duty upon the parent to be with it all the time. I charge you that the negligence of the parent, if there was any, would be no defense, if the child was killed by the negligence of the defendant.

Where a person, without any fault on his part, is confronted with a sudden emergency, the law would measure his conduct accordingly, but the law also requires that due care shall be used to keep the emergency from arising.

I charge you that a man who drives an automobile upon the public highway has the duty to keep a lookout—a reasonable lookout—such as a man of ordinary prudence and care would keep.

Now, there are certain rules and regulations adopted by the statute law which a person who drives a motor vehicle must observe:

First, I charge you that, if a man driving an automobile voilates the Statute law of the State, that is negligence *per se,* or negligence in itself. If that negligence is the direct and proximate cause of the death of a person using the highway, then that would be a case of involuntary manslaughter

Now, what is the statute law that attempts to regulate automobile traffic in this State? I desire to read to you Sections 601, 602, and 606 of the Statutes, because that is the law of the land:

"No person shall operate a motor vehicle on a public highway at a greater rate of speed than is reasonable and proper at the time and place, having regard to the traffic and use of the highway, and its condition, or so as to endanger the life, limb or property of any person or in any event at a greater rate than fifteen miles an hour, subject, however, to the other provisions in Sections 602 to 608, inclusive."

"Upon approaching a crossing of intersecting public highways, or a bridge, or a sharp curve, or a steep descent, and also in traversing such crossing, bridge, curve or descent, a person operating a motor vehicle shall have it under control, and operate it at the rate of speed no greater than six miles an hour, and in no event greater than a reasonable and proper, having regard to the traffic then on such highway and the safety of the public."

"Sec. 606. Every motor vehicle while in use on a public highway shall be provided with good and efficient brakes and also with a suitable bell, horn or other signal, and be so constructed as to exhibit during the period necessary from or after sunset until not necessary before sunrise, a white light visible within a reasonable distance in the direction toward which the vehicle is proceeding, and a red light in reverse direction: *Provided,* That in case of heavy fog, if necessary, such light shall be displayed in the daytime before sunset and after sunrise."

You will remember it would make no difference how negligent a person is and how many statutes he may violate, if such was not the proximate cause of the death or the injury complained of. In such a case there could be no negligence so far as the law is concerned, or, rather, no offense.

The negligence the State is called upon to prove in this case is that the defendant was not only guilty of negligence,

but that it was the direct, proximate, and efficient cause of the death of the child. For example only, if a man is driving an automobile without lights in the daytime, and injury and damage is caused, the absence of lights, while it is a violation of the Statute law, would not be the proximate cause of the alleged damage or injury, you see. Negligence is a relative term, and what might be negligence under one set of circumstances might be due care under a different set of circumstances. When a man runs by or through a place where people are expected to be passing and repassing, he must under the law have his car under control; that is, he must use due care in approaching such place or places. Again, what might be due care in the country where people are not expected to be passing and repassing would be negligence in town where people are frequently passing and thickly settled, and a man with reason would expect them to be passing and repassing constantly.

The defendant's counsel asks me to charge you the following propositions of law, all of which I have already covered, but I will put them in the language of defendant's counsel:

"(1) I charge you that there is no presumption of negligence on the part of the defendant merely by reason of the fact that the automobile which he was driving struck the deceased, death resulting therefrom, but the defendant is presumed not to have driven his automobile in a negligent, willful, or unlawful manner, and that presumption remains until it is removed by the evidence beyond a reasonable doubt.

"(2) Negligent driving of the automobile by the defendant along the public highway is a necessary element in this case, and, unless the State has proved to your satisfaction beyond a reasonable doubt that the defendant was driving his automobile in a careless, negligent, or (willful) manner at the time it struck the deceased, then I charge you that he is not guilty of the crime as charged and your verdict

will be 'Not guilty.' I left out the word 'willful,' because the State does not contend that the defendant was willful in any way.

"(3) I charge you further that the burden is on the State to prove to your satisfaction beyond a reasonable doubt that the injury resulting in death was not accidental, and if you find that the injury causing the death of the deceased was due to an accident and was not brought about by the negligent, willful, or malicious conduct of the defendant as the proximate cause thereof, then it is your duty to find the defendant 'Not guilty.' "

I charge you that with this statement: An accident may be punishable; a negligent killing may be called an accident in contradistinction from a malicious killing. If it is shown that the defendant did not use due care, and that the failure to observe due care was the proximate cause of the death of the child, and a person who fails to observe due care and such failure resulting in the death of another person as the proximate cause thereof, such a person would be guilty of involuntary manslaughter.

The State must prove its case beyond a reasonable doubt. I have already charged you that, I think.

The form of your verdict will be "Guilty of involuntary manslaughter," or "Not guilty."

I should instruct you that the punishment for involuntary manslaughter is not less than two nor more than thirty years' imprisonment, in the discretion of the Court. Your verdict will be "Guilty of involuntary manslaughter" or "Not guilty." Whatever verdict you find, write it on the back of this indictment, and sign your name, and add the word "Foreman" under it. Whenever you shall have agreed write out your verdict and seal it up in this envelope, and keep it in your personal possession until tomorrow morning at 9:30, at which time you will be in Court. When you have agreed, inform the bailiff, and he will let you go. The

Sheriff will make you as comfortable as possible. If you want supper, let him know.

*Messrs. Dobson & Vassy,* and *Brown & Boyd,* for appellant, cite: *New trial should be granted where there was irrelevant matter in charge:* 89 S. C., 570; 12 Cyc., 613; 91 S. C., 316; 66 S. C., 18; 75 S. C., 512; 70 S. C., 316; 72 S. C., 162. *Wealth of defendant not relevant:* 93 S. C., 49. *Reading inapplicable statute is error:* 80 S. C., 380. *Charge made no distinction between accidental homicide and negligent killing:* 68 S. C., 317; 73 S. C., 358; 91 S. C., 244.

*Messrs. I. C. Blackwood, Solicitor,* and *Butler & Hall,* for respondent.

December 29, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

On either March 31, or April 1, 1920 (variously stated), the defendant, while driving an automobile on the public highway leading from Gaffney to Chesnee, in Cherokee County, ran over a little girl, Hazel Scruggs, between three and four years old, and inflicted injuries from which she died later in the day. He was indicted for murder and tried before Special Judge Ramage and a jury, at March term, 1922, the trial resulting in a conviction of manslaughter and a sentence of two years' imprisonment.

The catastrophe occurred near the residence of one W. J. Davis, some ten or twelve miles from Gaffney, near the Cowpens battleground. Davis' residence is near the road, on the west side. Immediately in front of the residence, on the opposite side of the road, is a small storehouse, the piazza of which is very near the ditch on the east side of the road. An automobile in which there were two men, and near which others were, was standing on the west side of the road, headed south, almost in front of the Davis residence.

Several larger children with the deceased were playing on the side of the road near the platform or piazza of the store. followed, and when about the middle of the road was struck the road and went towards the Davis house. The child followed, and when about the middle of the road was struck by the defendant's car.

The State offered evidence tending to show that the defendant's car was being run at a speed of from 30 to 40 miles an hour, and that the defendant, if he had been keeping a proper lookout, could have avoided the collision. The defendant offered evidence tending to show that his car was not running over 25 miles an hour; that his attention was at the time centered upon the standing car that was facing him and apparently ready to pull into the road ahead of him; that the child appeared suddenly in front of his car; and that he did all that he could to avoid striking it.

The presiding Judge, in an exceedingly clear and able charge, presented the law of involuntary manslaughter based upon negligence to the jury; but we are convinced that under the peculiar circumstances of the case he committed reversible error in two particulars:

1    The negligence attributed to the defendant was based almost exclusively upon the speed at which he was driving his car. This was the matter to which the attention of the jury was most acutely directed. In his charge to the jury the presiding Judge read and impliedly applied Section 602 of the Criminal Code to the case. That section limits the speed of automobiles to six miles an hour under certain circumstances, none of which appeared in the case—"approaching a crossing of intersecting public highways, or a bridge, or sharp curve, or a steep descent." He should either not have read that section at all or plainly indicated its inapplicability to the case. With the minds of the jury tensely attracted to that issue, it is not improbable that the reading of the Statute by the presiding Judge, ac-

companied by no explanation of the terms used or indication of its inapplicability, amounted to an implication of its controlling influence.

In *Holmes v. Weinheimer,* 66 S. C., 18; 44 S. E., 82, it is held that an instruction inapplicable to any facts in the case and tending to mislead the jury is error.   See, also, *Walker v. Tel. Co.,* 75 S. C., 512; 56 S. E., 38; *Hyland v. Tel. Co.,* 70 S. C., 315; 49 S. E., 879; *Craig v. Railroad·Co.,* 93 S. C., 49; 76 S. E., 21.   It does not necessarily follow, however, that it is reversible error to charge a proposition of law where there are no facts in the particular case to which it is applicable.   In order to constitute reversible error, the Court must be satisfied that there are reasonable grounds for supposing that the jury might have been misled to the prejudice of the appellant.   *Boggero v. Railroad Co.,* 64 S. C., 104; 41 S. E., 819; *Sharpton v. Railroad Co.,* 72 S. C., 162; 51 S. E., 553; *State v. Washington,* 80 S. C., 376; 61 S. E., 896.   This, we think, as referred to above, has been sufficiently demonstrated.

The defendant preferred the following request to charge:

"I charge you further that the burden is on the State to prove to your satisfaction beyond a reasonable doubt that the injury resulting in death was not accidental, and if you find that the injury causing the death of the deceased was due to an accident and was not brought about by the negligent, willful, or malicious conduct of the defendant as the proximate cause thereof, then it is your duty to find the defendant not guilty."

The presiding Judge made the following statement in reference to it:

"I charge you that with this statement: A negligent killing may be called an accident in contradistinction from a malicious killing.   If it is shown that the defendant did not use due care, and that the failure to observe due care was the proximate cause of the death of the child, and a person

20—S. C.—122

who fails to observe due care and such failure resulting in the death of another person as the proximate cause thereof, such a person would be guilty of involuntary manslaughter."

The defendant was clearly entitled to the request as it was written. The modification practically recognized that right, but contained an allusion to what might be termed an "accident" which was calculated to cast doubt upon the correctness of the defendant's request and to confuse the jury. While it is true that in common parlance the term "accident" is applied to a catastrophe regardless of the question of negligence, yet, when it appeared that the purpose of the appellant was to use it in the sense of fortuitous event, lacking wholly the element of negligence, he was entitled to such application. As is said in the case of *State v. Amer. Ag. Chem. Co.*, 118 S. C., 303; 110 S. E., 800:

"The judicial conclusion that an act was an accident is a positive negation of the existence of personal volition or negligence on the part of the alleged perpetrator."

It was evidently in this sense that the appellant used the term and was entitled to have the charge as so understood given to the jury.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MR. JUSTICES WATTS and MARION concur.

MR. JUSTICE FRASER (dissenting): Appellant's statement of facts:

"The defendant, Edley Martin, accidentally killed Hazel Scruggs on the road to Chesnee, in Cherokee County, on March 31, 1920. After indictment on trial, he was found guilty of involuntary manslaughter and sentenced to two years. The testimony shows that the accident occurred on one of the improved roads of Cherokee County, in front of the home of Jeff Davis, near the Cowpens battleground. On the opposite side of the road from the house is a small country store room, which has a small porch coming to the

edge of road. The road slants from the center to porch, with a shallow ditch at that point. The child was somewhere around the store; the exact spot never having been determined. A car was standing on the opposite side of the road, facing toward Gaffney, with two men therein and one standing on the left side with back to road."

"Just as the defendant, who was approaching this spot in his Dodge car, got close to the store, the child ran across the road, looking at the other car. According to the testimony, it happened so quickly that the defendant had no time to stop or turn sufficiently either way. It was an unfortunate and unavoidable accident."

The appellant's first assignment of error is that his Honor read to the jury the statute relating to rate of speed of a car at a crossing when there was no crossing at the place where the child was struck by the automobile. In the first place, the rule is well settled that, if the presiding Judge misstates the issues, it is the duty of him who is injured thereby to call attention to the misstatement at the time, or he cannot afterwards complain. This rule might not be strictly enforced, however, if the charge was really misleading. Here it was not. His Honor was merely giving to the jury a general view of the law in reference to the running of automobiles. He made no more application of the crossing statute than he did that regulation as to bridges, fogs, etc. The jury could not have been misled.

The appellant asked his Honor to charge the jury:

"(3) I charge you further that the burden is on the State to prove to your satisfaction beyond a reasonable doubt that the injury resulting in death was not accidental, and if you find that the injury causing the death of the deceased was due to an accident and was not brought about by the negligent, willful, or malicious conduct of the defendant as the proximate cause thereof, then it is your duty to find the defendant 'Not guilty.'"

His Honor told the jury that negligent killings were sometimes called accidents. The appellant has no right to complain of this charge. It was very clear and very fair to appellant. Let the charge be reported. The exception should be overruled.

The appellant complains that his Honor did not charge the jury as to effect of contributory negligence of the parents of the dead child. This is an offense against the State. The contributory negligence of the parents has absolutely nothing to do. with this case.

The judgment should be affirmed.

MR. CHIEF JUSTICE GARY concurs.